IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12436-KHK |
| **Joseph John Sunday,** | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **Sunrise Senior Living Management, Inc.,** | ) | |
| **acting as manager on behalf of Welltower** | ) | |
| **OPCO Group LLC, owner of The Jefferson** | ) | |
| **Residential Condominium,** | ) | |
| Movant, | ) | Relief from Stay |
| v. | ) | |
| **Joseph John Sunday and** | ) | |
| **Thomas P. Gorman, Chapter 13 Trustee,** | ) | |
| Respondents. | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(900 North Taylor Street, Apt. 2022, Arlington, VA 22203-1879)**

**NOTICE**

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one on this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

**If you do not wish the Court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within FOURTEEN (14) days from the date of service of this motion, you must file a written response explaining your position with the Court and serve a copy on the movant. Unless a written response is filed and served within this FOURTEEN day period, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.**

**If you mail your response to the Court for filing, you must mail it early enough so that the Court will receive it on or before the expiration of the FOURTEEN-day period.**

**ATTEND THE PRELIMINARY HEARING SCHEDULED TO BE HELD ON JANUARY 8, 2026, AT 11:00 A.M. IN THE UNITED STATES BANKRUPTCY COURT, ALEXANDRIA DIVISION, COURTROOM #3, 3RD FLOOR, 200 SOUTH WASHINGTON STREET, ALEXANDRIA, VIRGINIA.**

Robert M. Marino, Esq. VSB #26076
Redmon Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314
703-879-2676 (Direct)
rmmarino@rpb-law.com
Counsel for Sunrise Senior Living Management, Inc.,
acting as manager on behalf of Welltower OPCO Group LLC,
as owner of The Jefferson Residential Condominium

Sunrise Senior Living Management, Inc. ("Sunrise"), acting as manager on behalf of Welltower OPCO Group LLC ("Welltower"), as owner of The Jefferson Residential Condominium (collectively, "Movant"), by and through the undersigned counsel, pursuant to 11 U.S.C. §362(d)(1) and Fed. R. Bankr. P. 4001(a), respectfully requests an Order granting Movant relief from the automatic stay to enforce all of its contractual and state law rights as the current owner of improved residential real property more particularly described below, and in support thereof states as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§1334 and 157(a), 11 U.S.C. §362(d)(1) and Federal Rules of Bankruptcy Procedure 4001(a) and 9014. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G). Venue is proper in this district and division pursuant to 28 U.S.C. §§1408 and 1409.

## Background

2. By operation of the events described below, Welltower is the current owner of a residential condominium unit located at 900 North Taylor Street, Apt. 2022, Arlington, VA 22203-1879 (the "Condominium Unit"), and more particularly described as Condominium Unit No. 2022 in The Jefferson Residential Condominium (the "Condominium"), located in Arlington County, Virgina.

3. The Condominium Unit is located in a portion of the Condominium that is configured as a self-contained retirement community and commonly known as Unit 3 of the Jefferson Senior Living Condominium Community (the "Unit 3 Community"), offering "Retirement Community Services," including meal service, access to recreational, community

and health care facilities and activities, and additional or alternative services typically provided to those persons living in a self-contained retirement community.

4. Marriott Retirement Communities, Inc. ("MRC"), established the Condominium by condominium instruments that were recorded on July 30, 1992, in Deed Book 2537 at Page 1340 among the land records of Arlington County, Virginia (the "Land Records"). As such, MRC was the original owner of the Condominium Unit.

5. Pursuant to the terms of a *Deed of Bargain and Sale* (the "Original Deed") dated January 29, 1993, and recorded on February 1, 1993, among the Land Records in Deed Book 2572 at Page 537, fee simple determinable title in and to the Condominium Unit was initially conveyed from MRC, as grantor, to Hugh G. Appling and Mary L. Appling, as grantee. A true copy of the *Original Deed* is attached and incorporated by reference as Exhibit A.

6. The *Original Deed* expressly recognized that Retirement Community Services would be offered to the grantee of the Condominium Unit. *See Original Deed* at Section 1(a)(4). It also expressly recognized that the grantee would be required to pay a "Monthly Service Fee" under the terms of a "Services Agreement" executed between the operator of the Unit 3 Community (i.e., the provider of the Retirement Community Services) and the owner of the Condominium Unit. *Id*. at Sections 1(a)(3) and 1(a)(7). Finally, in the absence of a Services Agreement, the *Original Deed* required a "Minimum Required Fee," consisting of payment of not less than seventy-five percent of the Monthly Service Fee. *Id*. at Section 1(a)(2).

7. Under the terms of the *Original Deed*, the grantor (also referred to as the "Revertee") of the Condominium Unit retained a reversionary interest that would cause fee simple title to the Condominium Unit to revert automatically from the grantee (also referred to as the "Revertor"), and without further action by grantor or any other person, to the Revertee. This

possibility of reverter was triggered by the operation of a "Special Limitation" provision in the *Original Deed* which provided that the fee simple ownership interest of Revertor in the Condominium Unit would "continue only UNTIL: (a) more than two hundred seventy consecutive days elapse (i) without full payment being made under any and all Services Agreements for the Condominium Unit, AND (ii) if a Services Agreement for the Condominium Unit is not in effect during any portion of the 270-day period, without the Minimum Required Fee for the entire 270-day period being paid, AND (b) if the Condominium Unit is encumbered by a Mortgage, more than ninety days elapse after notice has been given to the Mortgagee…of the existence and nature of facts which have caused the 270-day period to commence and that reversion of title and loss of the Mortgagee's security will occur if corrective action is not taken." *See Original Deed* at Section 2.

8. If fee simple title to the Condominium Unit reverts to the Revertee by operation of the Special Limitation, the *Original Deed* provides that "there shall be a presumption of the validity of title in the Revertee if there is recorded among the land records of Arlington County, Virginia, an affidavit by the Revertee that fee simple title has reverted by operation of the Special Limitation and that the Revertor and any Mortgagee of the Condominium Unit were notified of the reversion." *See Original Deed* at Section 3. The *Original Deed* further provides that "such presumption shall become irrebuttable thirty days after recordation of such affidavit if an action by the Revertor or the Mortgagee to contest such reversion is not filed within such thirty-day period." *Id*.

9. After title reverts to the Revertee, the Original Deed contemplates that the Revertee may sell the Condominium Unit to an unrelated third party. *See Original Deed* at Section 3. At closing of such sale, the Revertee is required to pay the Revertor the net proceeds

4

of sale after full payment of (i) all costs and expenses of sale, (ii) the amounts owed to any mortgage lender with a lien on the Condominium Unit,[1] and (iii) the Monthly Service Fees (or the Minimum Required Fees if there is no Services Agreement), together with interest and all costs of collection, accruing through the date of closing. *Id.*

10. The *Original Deed* also provides that all sums due and payable under any Services Agreement for the Condominium Unit, together with interest and costs of collection (including reasonable attorneys' fees), are expressly secured by a lien in the Condominium Unit. *See Original Deed* at Section 5.

11. Welltower is the successor-in-interest to MRC and became the holder of the reversionary interest in the Condominium Unit.

12. Over the years since the *Original Deed* was recorded, the Condominium Unit has been voluntarily conveyed to different individuals and entities. All persons acquiring title to the Condominium Unit are subject to the reversionary rights specified in the *Original Deed*.

13. In early-2017, the Federal National Mortgage Association ("FNMA") acquired title to the Condominium Unit by recordation of a deed in lieu of foreclosure. In turn, FNMA conveyed the Condominium Unit to Joseph John Sunday ("Sunday" or "Debtor"), the debtor herein, by a deed recorded among the Land Records as Instrument No. 20170100009257. On May 5, 2017, shortly after taking title, Sunday executed a *Services Agreement* (the "Sunday Services Agreement") with Sunrise, the provider of Retirement Community Services in connection with the Condominium Unit. A true copy of the *Sunday Services Agreement* is attached and incorporated by reference as Exhibit B. Thereafter, Sunday received Retirement Community Services from Sunrise under the terms of the *Sunday Services Agreement*.

---

[1] In this case, Sunrise has confirmed that the Condominium Unit is not encumbered by a lien to secure a mortgage lender.

14.     On December 19, 2024, Sunrise sent Sunday a written "Notice of Default" (the "Default Notice"), advising that as of September 1, 2024 (the "Default Commencement Date"), Sunday was in default for failure to pay the sum of $13,151.56 in fees arising under the *Sunday Services Agreement*. A true copy of the *Default Notice* is attached and incorporated by reference as Exhibit C. The *Default Notice* advised that if the default was not cured on or before January 2, 2025, the *Sunday Services Agreement* would be terminated and Sunday would be responsible for Minimum Required Fees. More importantly, the *Default Notice* expressly advised Sunday that if he remained in default for 270 days after September 1, 2024, then Welltower would "pursue its remedies, including the automatic reversion of fee simple title to the [Condominium] Unit to Welltower."

15.     More than 270 consecutive days elapsed from the Default Commencement Date without full payment being made of the Monthly Service Fees accruing under the *Sunday Services Agreement*, nor did Sunday tender the Minimum Required Fees.

16.     On August 25, 2025, Sunrise sent Sunday a written "Notice to Revertor of Reversion" (the "Reversion Notice"), formally notifying him that the 270-day period had commenced on September 1, 2024, and that on May 29, 2025, fee simple title to the Condominium Unit reverted automatically to Welltower by operation of the Special Limitation contained in the *Original Deed*. A true copy of the *Reversion Notice* is attached and incorporated by reference as Exhibit D.

17.     On August 27, 2025, Sunrise executed and delivered to Welltower a *Certification of Reversion* (the "Certification") which confirmed, *inter alia*, that fee title to the Condominium Unit reverted to Welltower under the terms of the Special Limitation and that all required notices

had been given to Sunday. A true copy of the *Certification* is attached and incorporated by reference as Exhibit E.

18. On August 27, 2025, in accordance with the requirement of the Special Limitation contained in the *Original Deed*, Welltower signed an *Affidavit of Revertee* and recorded it among the Land Records on August 29, 2025, as Instrument No. 20250100011232 (the "Affidavit"). A true copy of the *Affidavit* is attached and incorporated by reference as Exhibit F. The *Affidavit* expressly reflected that the Condominium Unit reverted to Welltower, as Revertee, on May 29, 2025.

19. Sunday failed to timely contest the reversion within the thirty-day period specified in the *Original Deed*. As such, there is now an irrebuttable presumption of validity of fee simple title in Welltower, as Revertee.

20. Welltower has entered into a contract to sell all of its right, title and interest in and to the Condominium Unit to Carolyn and Richard Stiener (collectively, the "Current Purchaser"), as third-party purchasers. Closing on the sale to the Current Purchaser was scheduled to take place on November 21, 2025. On October 23, 2025, Sunrise—by and through its counsel—sent written notice (the "Vacatur Notice") to Sunday advising that the Condominium Unit had been sold and requesting that he vacate and surrender possession of the Condominium Unit by November 14, 2025, to permit closing on the sale to the Current Purchaser. A true copy of the *Vacatur Notice* is attached and incorporated by reference as Exhibit G.

21. Sunday did not respond to Sunrise's demand to vacate and tacitly refused to surrender possession of the Condominium Unit.

22. On November 19, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*. (the

"Bankruptcy Code"), thereby commencing the instant case in the above-captioned Court. Thomas P. Gorman ("Trustee") is the standing Chapter 13 Trustee in this case.

23. As of the Petition Date: (i) the Debtor has no ownership interest in the Condominium Unit, but continues to occupy the premises, and (ii) Sunday owes total Monthly Service Fees and Minimum Required Fees of $21,805.59, plus interest and all costs of collection, including reasonable attorneys' fees, for Retirement Community Services provided in connection with the Condominium Unit. Additional Minimum Required Fees, along with interest and collection costs, are accruing for so long as Sunday continues to occupy the Condominium Unit.

24. If Debtor vacates the Condominium Unit and Welltower is permitted to close on the sale to the Current Purchaser or sell to another third-party purchaser, all net proceeds of sale—after payment of all costs of sale, all unpaid real estate taxes, all unpaid condominium association fees, and all amounts owed to Sunrise for Monthly Service Fees and Minimum Required Fees, along with all accrued interest and collection costs thereon—will be paid to the Trustee at closing in accordance with the Special Limitation requirements set forth in the *Original Deed*.

## Relief Requested

25. Sunrise, as manager for Welltower, now seeks to lift and terminate the automatic stay imposed by section 362(a) of the Bankruptcy Code so as to permit Sunrise to (i) evict Sunday from the Condominium Unit, and (ii) close on the sale of the Condominium Unit to the Current Purchaser or remarket the Condominium Unit, execute a new contract and close thereon, all subject to payment to the Trustee of the net proceeds of sale after payment of all costs of sale, all unpaid real estate taxes, all unpaid condominium association fees, and all amounts owed to

Sunrise for Monthly Service Fees and Minimum Required Fees, along with all accrued interest and collection costs.

## Argument

26. Section 362(d)(1) of the Bankruptcy Code provides that:

> (d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying or conditioning such stay –
>
> > (1) for cause, including a lack of adequate protection of an interest in property of such party in interest; …

11 U.S.C. § 362(d)(1). Cause is not defined by the Bankruptcy Code and whether cause exists must be determined on a case by case basis. *See, e.g., CMF Loudon L.P. v. Nattchase Assocs., L.P. (In re Nattchase),* 178 B.R. 409 (Bankr. E.D. Va. 1994).

27. In this case, cause exists to lift and terminate the automatic stay because (i) Debtor, as Revertor, no longer holds any record title in the Condominium Unit, other than a right of his bankruptcy estate to receive at closing the net proceeds of sale (after payment of all costs of sale, all unpaid real estate taxes, all unpaid condominium association fees, and all amounts owed for Retirement Community Services provided in connection with the Condominium Unit, along with interest and costs of collection) pursuant to the requirements of the Special Limitation in the *Original Deed*, (ii) there is no basis under the Bankruptcy Code or applicable non-bankruptcy law to restore title in the Condominium Unit to the Debtor, and (iii) Debtor has no further right to possession of the Condominium Unit.

## Conclusion

WHEREFORE, for all of the foregoing reasons, Sunrise, as manager for Welltower, respectfully requests that the Court (i) enter an *Order* lifting and terminating the automatic stay so as to (i) evict Sunday from the Condominium Unit, and (ii) close on the sale of the

Condominium Unit to the Current Purchaser or remarket the Condominium Unit, execute a new contract and close thereon, all subject to payment to the Trustee of the net proceeds of sale after payment of all costs of sale, all unpaid real estate taxes, all unpaid condominium association fees, all amounts owed to Sunrise for Monthly Service Fees and Minimum Required Fees, along with all accrued interest and collection costs, and (b) grant such other and further relief as the Court deems just and proper.

Dated: December 15, 2025                    Respectfully submitted,

/s/ Robert M. Marino
Robert M. Marino, Esq.  VSB #26076
Redmon, Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, Virginia 22314-3143
Phone: 703-879-2676 (Direct)
Facsimile: 703-684-5109
Email: rmmarino@rpb-law.com
Counsel for Sunrise Senior Living Management, Inc., acting as manager on behalf of Welltower OPCO Group LLC, as owner of The Jefferson Residential Condominium

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of December, 2025, I caused a copy of the foregoing *Motion*, with Exhibits and proposed *Order*, to be served electronically through the ECF system upon all persons designated to receive notice thereunder, and upon the following persons via United States first class mail, postage prepaid:

Joseph John Sunday
900 North Taylor Street, Apt. 2022
Arlington, VA 22203-1879

and upon the following persons via electronic mail:

Richard Owen Bolger
Bolger Law Firm, PLLC
Email: richard@bolgerlaw.com
Counsel for Debtor

Thomas P. Gorman, Chapter 13 Trustee
Email: tgorman@chapter13alexva.com

/s/ Robert M. Marino
Robert M. Marino