# EXHIBIT A

32113             BOOK 2572 PAGE 0537

## DEED OF BARGAIN AND SALE

THIS DEED is made as of ___January 28___, 19_93_, by and between MARRIOTT RETIREMENT COMMUNITIES, INC., a Delaware corporation (hereinafter referred to, together with its successors and assigns, as "Grantor") and ___HUGH G. APPLING and MARY L. APPLING, husband and wife___ (hereinafter referred to, together with his, her, its or their heirs, devisees, administrators, executors, successors and assigns, as "Grantee").

WITNESSETH THAT for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, Grantor does hereby grant, bargain, sell and convey with Special Warranty of Title unto Grantee, ___as tenants by the entirety with the common law right of survivorship___,

Condominium Unit No. ___2022___ in The Jefferson Residential Condominium, located in Arlington County, Virginia, established by Condominium Instruments recorded on July 30, 1992 in Deed Book 2537 at Page 1340 among the land records of Arlington County, Virginia.

To have and to hold the Condominium Unit in fee simple determinable, but upon the Special Limitation hereinafter described, it being the intention of Grantor and Grantee to vest in Grantee a determinable, base, or qualified estate in fee simple in the Condominium Unit, and to reserve unto Grantor a possibility of reverter (or other reversionary interest, however, the same may be denominated) that will cause fee simple title to the Condominium Unit to revert automatically, and without further action by Grantor or any other Person, to the Revertee upon operation of the Special Limitation created herein.

1.     Definitions. (a) When used in this Deed:

(1)    All capitalized terms used without definition have the meanings currently specified for such terms in the Condominium Instruments for The Jefferson Residential Condominium, or if not defined therein, the meanings specified for such terms in the current provisions of Section 55-79.41 of the Condominium Act.

(2)    "Minimum Required Fee" means seventy-five percent of the Monthly Service Fee which would at the time in question be payable under a Services Agreement for the Condominium Unit with a single lawful occupant in continuous residence.

(3)    "Monthly Service Fee" means the basic fee payable under a Services Agreement for a unit of the same unit type as the Condominium Unit.

---

MAILING ADDRESS OF GRANTEE:
900 North Taylor Street, #2022
Arlington, Virginia 22203

RETURN TO: REAL TITLE COMPANY, INC.
A9201659/ce

CONSIDERATION: $226,650.00
REAL PROPERTY CODE: 14-051-322



BOOK 2572 PAGE 0538

(4) "Retirement Community Services" means those services offered from time to time by the owner of Unit 3 under a Services Agreement, initially including: meal service, access to recreational, community and health care facilities and activities available within The Jefferson Senior Living Condominium Community and such additional or alternative services as may be determined from time to time in the discretion of the owner of Unit 3 to serve those persons living in a self-contained retirement community.

(5) "Revertee" means the Grantor as long as the Grantor is the owner of Unit 3, and thereafter, the successors and assigns of Grantor who own Unit 3 and who hold the possibility of reverter.

(6) "Revertor" means the Grantee as long as the Grantee is the owner of the Condominium Unit, and thereafter, any heirs, devisees, administrators, executors, successors and assigns of Grantee who may be defeased of title to the Condominium Unit by operation of the Special Limitation.

(7) "Services Agreement" means a contract between the owner from time to time of Unit 3 (or any assignee thereof) and one or more individuals who are entitled to occupy a condominium unit within the Condominium pursuant to which such owner makes available to such individual(s) certain facilities located within The Jefferson Senior Living Condominium Community and provides Retirement Community Services to such individual(s), all as more particularly described in the contract.

(8) "Unit 3" means Unit 3 in The Jefferson Senior Living Condominium Community as such unit may be configured from time to time.

2. Special Limitation. The Special Limitation is that Grantee's estate in the Condominium Unit shall continue only UNTIL: (a) more than two hundred seventy consecutive days elapse (i) without full payment being made under any and all Services Agreements for the Condominium Unit, AND (ii) if a Services Agreement for the Condominium Unit is not in effect during any portion of the 270-day period, without the Minimum Required Fee for the entire 270-day period being paid; AND (b) if the Condominium Unit is encumbered by a Mortgage, more than ninety days elapse after notice has been given to the Mortgagee (in accordance with Section 11.1 of the Bylaws for the Condominium) of the existence and nature of facts which have caused the 270-day period to commence and that reversion of title and loss of the Mortgagee's security will occur if corrective action is not taken. The 270-day period shall begin on the first day of any month for which: as to clause (i), the Monthly Service Fee for that month due under the Services Agreement for the Condominium Unit is not paid when due, or as to clause (ii), the Minimum Required Fee for that month is not paid on the first day of that month; provided, however, that once the 270-day period has begun, it shall continue to run until payment in full of the entire balance due for the period beginning on the commencement date of the 270-day period and ending on the date of payment. The running of the 270-day period shall be suspended: (i) during any period in which the Revertee will not or cannot make available

2

BOOK 2572 PAGE 0539

Retirement Community Services under the Services Agreement for the Condominium Unit, and (ii) during any period in which the Condominium Unit cannot lawfully be occupied.

3. _Disposition of the Condominium Unit Following Reversion_. If fee simple title to the Condominium Unit reverts to the Revertee by operation of the Special Limitation, there shall be a presumption of the validity of title in the Revertee if there is recorded among the land records of Arlington County, Virginia an affidavit by the Revertee that fee simple title has reverted by operation of the Special Limitation and that the Revertor and any Mortgagee of the Condominium Unit were notified of the reversion; such presumption shall become irrebuttable thirty days after recordation of such an affidavit if an action by the Revertor or the Mortgagee to contest such reversion is not filed within such thirty-day period. If fee simple title to the Condominium Unit reverts by operation of the Special Limitation, and if the Condominium Unit is conveyed to an unrelated third party within the six months immediately following such reversion ("Sales Period"), the Revertee shall pay to the Revertor an amount equal to the total selling price realized from such conveyance, less and except an amount equal to (a) the Minimum Required Fee for the period beginning two hundred seventy days before the date of such reversion and ending on the date of such conveyance, and (b) all reasonable expenses paid or incurred by the Revertee to third parties in advertising, selling and conveying the Condominium Unit, including (without limitation) costs of refurbishing and cleaning the Condominium Unit, broker's fees and commissions, and all costs related to the conveyance, such as settlement costs and reasonable attorney's fees. The Revertee may not sell the Condominium Unit during the Sales Period for a total selling price less than seventy-five percent of the most recent assessed value of the Condominium Unit for real estate tax purposes. If the Condominium Unit is not conveyed to an unrelated third party within the Sales Period, the Revertee shall pay to the Revertor, within thirty days after the end of the Sales Period, an amount equal to the greater of: (i) the amount calculated pursuant to the second sentence of this paragraph if the Condominium Unit is conveyed to a party related to the Revertee; or (ii) seventy-five percent of the most recent assessed value of the Condominium Unit for real estate tax purposes, minus an amount equal to the Minimum Required Fee due during the Sales Period if the Condominium Unit is not conveyed within the Sales Period. If the Revertee cannot convey marketable title within six months after the date of reversion, then the Sales Period shall extend until six months after the first date on which the Revertee can convey marketable title.

4. _Payment to Revertor and Mortgagee_. The Revertee shall pay the amount due as determined in accordance with paragraph 3 to the Revertor after first paying out of such amount, to the extent sufficient therefor, the amount then due and payable to any Mortgagee secured by a Mortgage on the Condominium Unit recorded before the reversion of title. Any such Mortgagee shall have a lien upon the Condominium Unit following the reversion of title to secure payment of any amount due to the Mortgagee from the Revertee under this paragraph. The lien shall be enforceable in the same manner as a Mortgage containing a power of sale and the Mortgagee shall sign a release of such lien upon receipt of payment.

3

BOOK 2572 PAGE 0540

5. **Lien Regarding Services Agreement Fees.** The Grantee's estate in the Condominium Unit conveyed by this Deed is hereby made subject to a lien which is hereby created to secure payment of all sums which may now or hereafter become due and payable under any Services Agreement for the Condominium Unit, together with (i) interest on such sums at the fluctuating rate of interest per year from time to time charged by the Internal Revenue Service (or any successor agency) on an underpayment of individual federal income tax liability and (ii) the cost of collecting such sums and such interest, including (without limitation) reasonable attorneys' fees. The lien created by this paragraph shall be subordinate to any Mortgage encumbering the Condominium Unit to the extent that the lien securing any sums due and payable before the Condominium Unit is sold at foreclosure or conveyed by deed in lieu of foreclosure shall be void, but the lien shall continue to secure all sums which become due and payable under any such Services Agreement after such foreclosure or conveyance, subject to the other provisions of this paragraph. The lien shall be enforceable in the same manner as a Mortgage containing a power of sale and the lienor shall sign a release of such lien upon receipt of payment.

6. **Termination of Special Limitation and Reverter.** If, for a period of five consecutive years there is no Services Agreement in effect for any unit in the Condominium, the Special Limitation and the possibility of reverter (or other reversionary interest, however, the same may be denominated) created herein shall automatically terminate and cease to be effective.

7. **Delivery Subject to Obligations.** This Deed is delivered and accepted subject to the reservations, restrictions on use, all covenants and obligations set forth in the Condominium Act and the Condominium Instruments, all of which restrictions, payment of charges and all other covenants, agreements, obligations and provisions are incorporated in this Deed and constitute covenants running with the land, equitable servitudes and liens to the extent set forth in such instruments and as provided by law, and all of which are accepted by Grantee.

IN WITNESS WHEREOF, Grantor has caused this Deed to be signed by its duly authorized officer and Grantee has signed this Deed to evidence Grantee's full knowledge and understanding of the possibility of reverter, all as of the date first set forth above.

MARRIOTT RETIREMENT
COMMUNITIES, INC.

By: _____           _____ [SEAL]
    Edward L. Bednarz                    Grantee, Hugh G. Appling

Title: Vice President                    _____ [SEAL]
                                         Grantee, Mary L. Appling

4

BOOK 2572 PAGE 0541

STATE OF MARYLAND      )
                       ) ss:
COUNTY OF MONTGOMERY   )

    I, the undersigned, a Notary Public for the aforesaid jurisdiction, do hereby certify that Edward L. Bednarz, whose name is signed to the foregoing Deed, who is personally known to me to be the Vice President of Marriott Retirement Communities, Inc., appeared before me and did acknowledge the same for the purposes therein set forth on behalf of the corporation.

    Given under my hand and official seal on _January 28_, 1993.

                                             _Lois A. Sprinkle_ [SEAL]
                                           Lois Sprinkle, Notary Public

My commission expires: 12/1/94


COMMONWEALTH OF VIRGINIA  )
                          ) ss:
COUNTY OF ARLINGTON       )

    I, the undersigned, a Notary Public for the aforesaid jurisdiction, do hereby certify that _Hugh G. Appling and Mary L. Appling_, whose name(s) is/are signed to the foregoing Deed, appeared before me and did acknowledge that, being informed of the contents thereof, he/she/they did voluntarily sign the Deed.

    Given under my hand and official seal on _January 28_, 1992.

                                             _Connie Emmert_ [SEAL]
                                           Connie Emmert, Notary Public

My commission expires: 3/31/96


This deed was presented and admitted to record on
date 2-1-93
time 13:28
CONSIDERATION
TESTE: _David A. McLeary_

STATE TAX
COUNTY TAX
TRANSFER FEE
CLERK'S FEE
GRANTOR TAX
TOTAL    5