1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| Joseph John Sunday, | ) | Case No. 25-12436-KHK |
| Debtor. | ) | Chapter 13 |
| | ) | |
| Sunrise Senior Living Management, Inc., | ) | |
| acting as manager on behalf of Welltower | ) | |
| OPCO Group LLC, | ) | |
| Movant, | ) | |
| v. | ) | |
| Joseph John Sunday and | ) | |
| Thomas P. Gorman, Chapter 13 Trustee, ) | ) | |
| Respondents. | ) | |

## MOTION FOR RECONSIDERATION OF ORDER GRANTING RELIEF FROM AUTOMATIC STAY
(900 North Taylor Street, Apt. 2022, Arlington, VA 22203-1879)

### NOTICE

-------------------------------------------------------------------------------------------------------------------
--Request reconsideration to review and change a previous order, as there's are errors in law/fact, new evidence, controlling law, incorrect legal application and overlooked evidence.

### Jurisdiction and Venue

1. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C.  §§1334

and 157(a), 11 U.S.C. §362(d)(1) and Federal Rules of Bankruptcy Procedure 4001(a)  and

9014. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G). Venue is proper in this

district and division pursuant to 28 U.S.C. §§1408 and 1409.

## **Background**

2. Sunrise Senior Living Management, Inc. ("Sunrise"), acting as manager on behalf of

Welltower OPCO Group LLC ("Welltower"), provided incorrect interpretation. misleading

information and unclear information. Such as the Jefferson Residential Condominium name

may be referencing a different property and differences may be misapplied. Per the provided

document, EXHIBIT B, "The Jefferson Senior Living Community Services Agreement", the

Debtor lives in The Jefferson Senior Living Community (referred to in this Agreement as the

"Community"). It is unknown why Sunrise Senior Living Management does not reveal that this

is a senior living community. It is misleading and unclear by not using the proper name and to

state that it is not a Senior Living Community. As extra laws and protection apply to elders

living in senior communities. Also unclear via using the"Condominium Unit" term, instead of

the terms in EXHIBIT B, "The Jefferson Senior Living Community Services Agreement". As

this is a senior living community, Code of Virginia and Administrative Code regulate senior

living communities, primarily under assisted living regulations (Title 63.2, Chapter 17, e.g., §

63.2-1732) and licensing rules (Title 22, Agency 40, e.g., Chapter 73), focusing on resident

rights, safety, facility standards (staff, design, services, medicine), licensing requirements

(background checks, inspections), and specific housing rules like 55+ age restrictions

(18VAC135-50-212). Key aspects include licensing by the Department of Social Services

(DSS), resident protections, and mandated services like social activities and qualified staff. And

use "The Jefferson Wellness Center", Facility Email Address:

thejefferson.ed@sunriseseniorliving.com. Sunrise Senior Living Management provides health and medical care in the "Residence". As it is a different named property and not providing clear and correct information that this is a senior living community and that Debtor is a disabled veteran senior citizen, misled the debtor and the court. Also as extra laws and protection extend to the Debtor. Sunrise Senior Living Management has provided false information in documents and/or of official records. This is an offense covered under various Virginia Code sections § 32.1-276 and/or § 18.2-472. Further improper naming and misleading from the "The Jefferson Senior Living Community Services Agreement", states it is "Residence" not "Condominium Unit". "The Jefferson Senior Living Community Services Agreement" states: "this Unit will be referred to in this Agreement as your "Residence". But Sunrise has provided false information in documents or official records when it stated: "900 North Taylor Street, Apt. 2022, Arlington, VA 22203-1879 (the "Condominium Unit"), and more particularly described as Condominium Unit No. 2022 in The Jefferson Residential Condominium (the "Condominium"), located in Arlington County, Virginia." In which include protection from Neglect and Exploitation. By operation of the events described below, the resident, Mr Sunday, is the current owner of the "Residence" located at 900 North Taylor Street, Apt. 2022, Arlington, VA 22203-1879, in "The Jefferson Senior Living Community". These errors in fact, are misleading terms such as replacing words and using "Condominium Unit", "Jefferson Residential Condominium", "self-contained retirement community", "Retirement Community Services", and "Condominium". As from above, Debtor prays for relief of Sunrise Senior Living Management's MOTION FOR RELIEF FROM AUTOMATIC STAY and respectfully requests to let the debtor sell the property unrestrictive so the bankruptcy can be paid in full.

It is further misleading as it states that they are: *"offering "Retirement Community Services," including meal service, access to recreational, community and health care facilities and activities, and additional or alternative services typically provided to those persons living in a self-contained retirement community."* As in April of 2025, Sunrise Senior Living Management stopped meals (food), linen service (withholding of clean linens, leading to unsanitary conditions) and housekeeping (Hygiene). By immediately stopping and not proving the 30 day remedy, per the "Agreement", also stated their "Motion", violated the debtor and the law. Additionally in Virginia, charging an elderly or vulnerable adult for a meal that is not provided constitutes both financial exploitation and neglect, violating several sections of the Code of Virginia. § 18.2-178.1 (Financial Exploitation of Vulnerable Adults). In such, Debtor prays for relief of Sunrise Senior Living Management's MOTION FOR RELIEF FROM AUTOMATIC STAY and let the debtor sell the property unrestrictive and requests financial reimbursements due to the "Agreement" violations, code violations, financial exploitation and neglect in regards to above, plus damages.

Additional violations are §18.2-369 (Abuse and Neglect of Vulnerable Adults): This statute makes it illegal for a responsible person (caretaker) to neglect a vulnerable adult. Neglect is defined as the failure to provide the necessities of life, including food. §63.2-1606 (Reporting Abuse/Neglect): This statute mandates that certain professionals report suspected exploitation or neglect of adults aged 60+ or incapacitated adults to Adult Protective Services (APS). As no employees or professionals reported such, Debtor life is affected and it is unknown what other things or violation Sunrise Senior Living Management will do to the debtor. So debtor prays for relief of Sunrise Senior Living Management's MOTION FOR

RELIEF FROM AUTOMATIC STAY and let the debtor sell the property unrestrictive and provide financial reimburse for the financial exploitation and neglect in regards to above, plus damages.

Intentionally coercing an adult to pay for goods or services (like food) that are not provided is considered financial exploitation. And § 18.2-471 makes it a misdemeanor to fraudulently issue fee bills for unperformed services or inflated amounts. Each bill from April 2025 has charges for unperformed services. As the bills are incorrect each bill is a violation. It is unknown what amount is actually due. In addition, § 59.1-200. Prohibited practices. 11. Misrepresenting by the use of any written or documentary material that appears to be an invoice or bill for merchandise or services previously ordered. Fraudulent fee bills (§ 18.2-471, § 18.2-187.1).

It is ambiguous and causes confusion when they state "a self-contained retirement community" as there is no specific statutory definition in Virginia law for a "self-contained retirement community." This is misleading as the "Residence" is in a building that has "Assisted living care" which provides "Companion services" by "Direct care staff" for daily living activities. The building shares with assisted living, skilled nursing, and memory care facilities. It is misleading and not clear when it was stated "a self-contained retirement community". All residents in Unit 3 are not "Independent living status" residents and all residents including Assisted Living, Memory Care, and Skilled Nursing, share the entire building such as they state the following: "Indoor swimming pool, Fitness center with personal trainers available, Beautiful patio, courtyard, and fountain, Resident gardening spaces, Bistro and food bar, Art room, Living area with piano, Library, spacious entertainment facility and

activity rooms, including a computer lab, Wi-Fi, and a game room, On-site beauty salon and

barber shop." Retrieved from the website:

https://www.sunriseseniorliving.com/communities/va/the-jefferson/experience. It is misleading

when they state "Fitness center with personal trainers available" as "personal trainers" from

outside sources and other things are available when they are paid for. Further, "Beautiful patio,

courtyard, and fountain" are not on the property. This makes it unclear what is meant by "a

self-contained retirement community". The "computer lab" is one computer. "Wi-Fi" is an

additional charge, such as other things in the world as they are available for  a charge. Listing

items that are available to the world is misleading. Listing items that are available via a charge

is deceptive. Virginia Consumer Protection Act (§ 59.1-200). Unfair Sales Practices: Laws

against untrue or deceptive advertising and inducements (e.g., § 18.2-216). Sunrise Senior

Living Management has failed when they state "General supervision and oversight" meaning

assuming responsibility for the well-being of residents, either directly or through contracted

agents. Debtor life and other lives are affected and it is unknown what Sunrise Senior Living

Management is actually meaning. So debtor prays for relief of Sunrise Senior Living

Management's MOTION FOR RELIEF FROM AUTOMATIC STAY and let the debtor sell the

property unrestrictive to pay off the bankruptcy/

Sunrise Senior Living Management stated "4. Marriott Retirement Communities, Inc.

("MRC"), established the Condominium  by condominium instruments that were recorded on

July 30, 1992, in Deed Book 2537 at Page  1340 among the land records of Arlington County,

Virginia (the "Land Records"). As such, MRC was the original owner of the Condominium

Unit." Based on Black's Law Dictionary and associated legal definitions, an "original" is

defined as the first copy. The first copy, the "Original Deed" was recorded on July 30, 1992,

in Deed Book 2537. As recorded, the "Original Deed" contains no such reservation.

Renaming items recorded at Arlington County is misleading and unclear as they stated "5.

Pursuant to the terms of a *Deed of Bargain a*nd Sale (the "Original Deed") dated  January 29,

1993, and recorded on February 1, 1993, …". Pursuant to the previous writing the "Original

Deed" was recorded on July 30, 1992, in Deed Book 2537. Now using "Original Deed" to

define the next recorded item lacks clarity and is confusing as Exhibit A is not the original

deed from 1992. After my deed was recorded, the original deed was mailed to me. This is the

original deed from 2017. In Virginia law, an "Original Deed" refers to the signed, notarized,

and recorded document transferring real property, requiring specific elements as the law

provides standard forms (like § 55.1-300). The seller's attorney will give the original deed to

the buyer's attorney at closing. That original then gets recorded at the clerk's office of the

local municipality. In essence, the "Original Deed" is the physical instrument that proves the

transfer, but once recorded, the clerk's book becomes the primary record, and authenticated

copies carry legal weight. As the "Original Deed" is from 1992, Sunrise causes confusion it

when it used the "Original Deed" term for the 1993 deed. Per Virginia law, the "Original

Deed". Additional confusion would also be the original deeds from 2006, 2008 (April), 2008

(June), 2014, and 2017, all recorded. As these were recorded, these deeds contain no such

reversion. The reversion is abandoned in deeds from 2006, 2008 (April), 2008 (June), 2014,

and 2017, and the reversion is superseded by time. Debtor prays for relief of Sunrise Senior

Living Management's MOTION FOR RELIEF FROM AUTOMATIC STAY, determine the

reversion is not current, the reversion is void, and let the debtor sell the property unrestrictive.

Sunrise Senior Living Management violated Title 55.1. Property and Conveyances. The ability

to enforce these deed restrictions hinges on their proper recording and the clarity of their terms. Virginia courts have the authority to issue injunctions to prevent or remedy violations, thereby upholding the integrity of the deed restrictions. Which was done per Virginia law, the "Original Deed" would also be the deeds from 2006, 2008 (April), 2008 (June), 2014, and 2017, all recorded, which do not have deed restrictions or the reversion expressing clarity of their terms, and no revision. Further Title 55.1. Property and Conveyances-300. Form of a deed: It must "describe the property or interest therein to be conveyed". Sunrise/Welltower 'interest' were not conveyed in the following deeds: 2006, 2008 (April), 2008 (June), 2014, and 2017, Mr. Sunday's deed, but regressed to use a 1993 Marriott to Appling's deed. There was no Special Limitation contained in the following deeds: 2006, 2008 (April), 2008 (June), 2014, and 2017, and therefore there is no reversion. As Sunrise Senior Living Management violated Title 55.1 Debtor prays for relief of Sunrise Senior Living Management's MOTION FOR RELIEF FROM AUTOMATIC STAY determine the reversion is not current, the reversion is void, and let the debtor sell the property unrestrictive.

The legitimacy of the deed is violated. Virginia courts have historically upheld deed restrictions that are reasonable, clear, and serve a legitimate community interest, but they have also invalidated those that are vague or infringe on protected rights. Per the letter: "The Special Limitation contained in the Deed provides that the ownership of the Condominium Unit will revert back to the Declarant, …" This is not in Mr. Sunday's deed or the preceding four deeds. Further the vagueness is the 'Minimum Required Fee', as this was paid. In Virginia, not all deed restrictions are enforceable, particularly when they conflict with public policy or statutory prohibitions, which is this case. As this violates the Fair housing law as they fail to ensure they

align with legal standards and community values. Debtor prays for relief of Sunrise Senior

Living Management's MOTION FOR RELIEF FROM AUTOMATIC STAY determine the

reversion is not current, the reversion is void, and let the debtor sell the property unrestrictive.

Per the Supreme Court the reversionary interest is not permissible. In Hamm v. Hazelwood, 292

Va. 153, 787 S.E.2d 144 (2016), the Supreme Court of Virginia express reservation of a

contingent reversionary interest is only permissible where the restraint on alienation is "limited

in duration" and "limited as to the number of persons to whom transfer is prohibited." The

reversion is not permissible as it is forever and can affect anyone. It is unknown how many

persons were affected prior to today and it is unknown how many persons will be affected in the

future as the reversion is forever. The U.S. Department of Housing and Urban Development

issued a regulation on "disparate impact," codifying a long-used legal precedent that says the

Fair Housing Act prohibits practices that result in discrimination "regardless of whether there

was an intent to discriminate." Among the circumstances determining reasonableness is whether

the restraint on alienation is "limited in duration" and "limited as to the number of persons to

whom transfer is Prohibited." Virginia's Supreme Court stopped reversionary interest via time

and scope 'sought to forever restrain'. The condition was not reasonably limited in time and

scope. See Camp 76 Va. at 143; cf. Carneal, 196 Va. at 609-10, 85 S.E.2d at 237-38. The 1993

Marriott deed being used by Welltower 'sought to forever restrain' the property to anyone and

everyone. The restraint "general as to time and person", courts historically have deemed

unenforceable. 3 Thompson, supra, § 29.05, at 793.

The deed has no express terms or clear implication. It is also true that "[c]onditions subsequent,

because they tend to destroy estates, are not favored in law, and when effective to work a

forfeiture of title they must have been created by express terms or clear implication." Pence, 127

Va. at 451, 103 S.E. at 695; accord Eagler v. Little, 217 Va. 869, 872, 234 S.E.2d 242, 244

(1977). The U.S. Department of Housing and Urban Development issued a regulation on

"disparate impact," codifying a long-used legal precedent that says the Fair Housing Act

prohibits practices that result in discrimination "regardless of whether there was an intent to

discriminate." Welltower/Sunrise Senior Living's covenants/reversion clauses is discrimination.

Additionally the reversion has affected the "source of funds" for the purchase of residence as

purchasers are told cash only offers. In Virginia, "source of funds" became a protected class

under fair housing law in July 2020, making it illegal to discriminate against buyers as no other

funding is used, only cash. Per the above issues Debtor prays for relief from Sunrise Senior

Living Management as the reversion clause is not in the deeds since 1993, as required by Title

55.1. Also violating Virginia Supreme Court ruling regarding time. And as the reversion clause

violates Virginia Supreme Court ruling regarding scope. And as the reversion clause violates

Virginia's discrimination in regard to "source of funds". Debtor prays for relief from the

MOTION FOR RELIEF FROM AUTOMATIC STAY as the reversion clause can not be

enforced. Throughout the Motion, it is misstated when stating the "Original Deed" as the

following are original deeds which are recorded in 2006, 2008 (April), 2008 (June), 2014, and

2017. Using the reversion in the second original deed, from over thirty years ago, is a classic

example of "a condition in restraint of alienation general as to time" and thus "void."

Additionally the following five original deeds do not have the unlimited scope and duration

stated in item 6. Additionally, this reverter does not exist due to time and scope, Virginia Code §

8.01-235 establishes that the defense of a statute of limitations.

As Sunrise Senior Living Management stated "This possibility of reverter was triggered by the operation of a "Special Limitation" provision in the Original Deed ..." As this is only a possibility and the word "Possibility" is defined by Black's Law Dictionary 6th Ed. to mean: "An uncertain thing, which may happen". The reverter is uncertain and cannot happen as the principle requires that the law must be clear, precise and unambiguous, and its legal implications foreseeable. Possibility is not enforceable. As it is unknown and unforeseen the reversion may not happen. It must be more than a possibility, it must be a fact. Therefore the revertor clause is void. Over the years since the original deed of 1992, and subsequent original deeds, from 2006, 2008 (April), 2008 (June), 2014, and 2017, are all recorded.without the reversionary rights making it unclear, unprecise and ambiguous, and therefore illegal. Debtor prays for relief from the MOTION FOR RELIEF FROM AUTOMATIC STAY determine the reversion is not current, the reversion is void, and let the debtor sell the property unrestrictive.

Voluntary conveyance is the intentional transfer of a title to a property from one individual to another through a deed. When such a transfer occurs without adequate consideration of the conveyor, the original owner who shall be making the transfer must be prepared to explain the transfer. There was no explanation and therefore no reversion. Based on Black's Law Dictionary and related legal interpretations, the phrase "voluntarily conveyed" refers to the transfer of property, information, or rights resulting from free choice, without compulsion, solicitation, or coercion. The key elements in this definition include "Free Will & Knowledge".Voluntary actions imply that the person acts of their own free will and generally with knowledge of the essential facts. Since the 1993 deed, there has been no "knowledge of the essential facts" in the subsequent original deeds, from 2006, 2008 (April), 2008 (June), 2014, and 2017. As Sunrise

Senior Living Management has an onsite sales team and a licensed real estate broker in the

building this knowledge could have been easily passed or put in subsequent original deeds, from

2006, 2008 (April), 2008 (June), 2014, and 2017. But it wasn't and therefore the reversion clause

is void. Debtor prays for relief from the MOTION FOR RELIEF FROM AUTOMATIC STAY

determine the reversion is not current, the reversion is void, and let the debtor sell the property

unrestrictive.

Per Sunrise Senior Living Management: "13. In early-2017, the Federal National Mortgage

Association ("FNMA") acquired  title to the Condominium Unit by recordation of a deed in lieu

of foreclosure. In turn, FNMA conveyed the Condominium Unit to Joseph John Sunday

("Sunday" or "Debtor"), the debtor herein, by a deed recorded among the Land Records as

Instrument No. 20170100009257. Sunrise Senior Living Management has provided

misinformation. The reverter letter uses the 1993 Marriott to Appling's deed, and then state:

"Revertor took title to the Condominium Unit subject to the Special Limitation by a deed

recorded as Instrument No 20170100009267 among the Land Records." The 1993 Marriott to

Appling's deed is not Instrument No 20170100009267 and Mr. Sunday deed does not have the

Special Limitation as per the letter. This is misleading and unclear. This time the information is

more than misleading it is incorrect. On  May 5, 2017, shortly after taking title, Sunday executed

a Services Agreement (the "Sunday  Services Agreement") with Sunrise, the provider of

Retirement Community Services in  connection with the Condominium Unit. A true copy of the

Sunday Services Agreement is attached and incorporated by reference as Exhibit B. Thereafter,

Sunday received Retirement Community Services from Sunrise under the terms of the Sunday

Services Agreement." It needs to be corrected that Sunrise Senior Living Management did not

provide services and violated the "Sunday Services Agreement" There is nothing in the "Sunday Services Agreement" that allows the general manager to stop meals, linen service and housekeeping. There is nothing in the "Sunday Services Agreement" about reversion. Debtor prays for relief from the MOTION FOR RELIEF FROM AUTOMATIC STAY determine the reversion is not current, the reversion is void, and let the debtor sell the property unrestrictive.

Also Sunrise Senior Living Management failed to state that the Resident/Sunday/Debtor did not sign the last page of the "Sunday Services Agreement" in the "RESIDENT ACKNOWLEDGMENT" section. Debtor prays for relief from the MOTION FOR RELIEF FROM AUTOMATIC STAY as the reversion clause can not be enforced.

Sunrise Senior Living Management states several dates that were not enforced and worked with the debtor such as proving a payment plan. The 270-day revision period ended in MAY 2025 and Sunrise Senior Living Management provided a payment plan rather than anything else. As the reversion was not done, oral modifications were done to a payment plan. This payment plan was established through an agreement that outlined the payment terms, and the offer was accepted by Mr. Sunday. Consideration was done as Mr Sunday made payments. A followup email confirmed this payment plan as stated: "You can of course continue to make partial payments", reference email below from General Manager Marcinik. Exhibit 01.

"The Jefferson.GM (John Marcinik <TheJefferson.GM@sunriseseniorliving.com> Mon, May 12, 1:22 PM" "Mr. Sunday, Good afternoon. Thank you for the recent payments to reduce your balance since our previous conversation. You can of course continue to make partial payments, but your services will not be resumed until the past due balance is paid in full." Without any

notice, the payment plan was stopped by Sunrise Senior Living Management violating the

agreement, which does not allow Sunrise Senior Living Management to invoke anything

without proper notice. Such as the taking of his residence. Debtor prays for relief from the

MOTION FOR RELIEF FROM AUTOMATIC STAY as there was a payment plan in place.

Sunrise Senior Living Management misstated in regard to payments and the Minimum Required

Fees when they stated "nor did Sunday tender the Minimum Required Fees." More than the

minimum was paid in August and even in July. And continued payments in September, within

the 30 day period, being paid in full. So it is unknown why Sunrise Senior Living Management

would provide misinformation to the court and abruptly stop the payment plan. May 2025 is also

the time frame that the debtor requested for the third time the funds owed from Sunrise Senior

Living Management be credited to the debtor's Sunrise Senior Living Management account. But

was refused payment, but was eventually completed in September. (Two checks of $1,620.00

and $1,230.00). Debtor prays for relief from the MOTION FOR RELIEF FROM AUTOMATIC

STAY as there was the minimum payment and Sunrise Senior Living Management wrongly

stopped the payment plan and failed to pay debtor moneys owed.

On August 27, 2025, Sunrise Senior Living Management wrongly executed and delivered to

Welltower a Certification of Reversion as there are no terms and no Special Limitation in any of

the deeds after 1993, the five following deeds. Sunrise Senior Living Management misstated

when stating that "Sunday failed to timely contest the reversion within the thirty-day period...".

Sunday has made phone calls to both Welltower and Sunrise Senior Living Management that

went unanswered. Numerous calls went to Vanessa Forsythe, the Chief Legal & Administrative

Officer and Corporate Secretary, but she failed to return the phone calls, but he continued to

make payment to Sunrise Senior Living Management. Per Sunrise, "affidavit of Revertee and recorded it among the Land Records on August 29, 2025" providing the thirty-day period. The financial matter was cleared up before the period. An email from Sunrise on the 4th of August 2025 verified that Sunday owed $15,156.84. Beginning in August, this amount was sent to Sunrise, and within the period, a total of funds of $30,895.68 was sent. It needs to be noted that this is also the timeframe where Sunrise Senior Living Management continued to charge for meals, linen services and housekeeping but did not provide for such items. Making the claimed amount incorrect by charging for something not provided. In Virginia, charging an elderly or vulnerable adult for a meal that is not provided constitutes both financial exploitation and neglect, violating several sections of the Code of Virginia. § 18.2-178.1. These make the Sunrise Senior Living Management suggested amount of $21,805.59 incorrect. Further Sunrise Senior Living Management, bill forAugust 2025 included $5,006.00 that was not due until 1 September 2025, thus making the amount due on 27 August 2025 incorrect. As Sunrise Senior Living Management violated several sections of the Code of Virginia. § 18.2-178.1, debtor prays for relief from the MOTION FOR RELIEF FROM AUTOMATIC STAY, determine the reversion is not current, the reversion is void, and let the debtor sell the property unrestrictive to pay the bankruptcy.

Also per the service agreement: "The Monthly Service Fee shall be due and payable in advance on or before the first (1st) day of each month throughout the term of this Agreement and will be deemed paid when received by Sunrise." Sunrise Senior Living Management billed for the Monthly Service Fee, but it is not due until the first of the following month making the amount due on August 27, 2025, $5,006.00 less. And making the bill from April 2025 incorrect.

The checks were received by Sunrise and therefore paid as per the service agreement as when they are received. Also under Virginia law, payments mailed are considered made on the date of the postmark, not when received. Per Virginia law, the payments were made earlier than recorded. So it is unknown what amount is the correct amount in April through August.. As Sunrise continued to acknowledge Sunday was the owner and charged Sunday $5,006.00 for September. This amount was paid, with funds for future months. They cannot determine that I was not owner in August but consider me owner in September and send a bill as I am the owner. As Sunrise/Welltower acknowledged Sunday was the owner and failed to pay the real estate taxes, Sunday, as owner paid the October 2025 taxes. Debtor prays for relief from the MOTION FOR RELIEF FROM AUTOMATIC STAY, determine that the amount due is incorrect, the posting date of payment are incorrect, determine the reversion is not current, the reversion is void, and let the debtor sell the property unrestrictive.

Per Sunrise Senior Living Management, The Ohio company, "Welltower has entered into a contract to sell" using Roxanne Southern, REALTOR, as per exhibit 03. As she uses REALTOR, a phone call was placed to Ohio REALTORS and found out she was not a REALTOR in Ohio where Welltower is. As Southern has an office in the same building as the resident, a phone call was made to Virginia REALTORS and found out she was not a REALTOR in Virginia. A phone call was made to the National Association of REALTORS and it was found out she is not a REALTOR. Using "REALTOR" when not a member of the National Association of REALTORS (NAR) is a trademark violation and misleading because REALTOR® is a protected mark indicating membership and adherence to NAR's strict Code of Ethics. Falsely claiming the title infringes on NAR's trademark and misrepresents one's professional standing, potentially leading

to complaints and legal action. Welltower involvement in Southern illegalities, trademark violation, failure to properly disclose professional standing, misrepresentation/fraud, and Southern's misleading ethics, failure to properly disclose unclear title (ownership issues), allows for relief for cancellation of the purchase contract and damages paid to the debtor.

As per Sunrise Senior Living Management, "On November 19, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), thereby commencing the instant case in the above-captioned Court. Thomas P. Gorman ("Trustee") is the standing Chapter 13 Trustee in this case. 23." After the "Petition Date" Sunrise Senior Living Management, violated the United States Bankruptcy Code by approaching and conversing with the debtor rather than communicating through proper attorney channels. Approximately 12 November a notice of the bankruptcy was posted with attorney contact information at the entrance of the residence. And the bankruptcy was filed on the 19th of November. Even with both of these, Sunrise Senior Living Management, entered the debtor's residence without permission after the "Petition Date". The debtor requested the eight people identify themselves, they would not identify themselves. Sunrise Senior Living Management, ordered people into the debtor's residence and ordered them to pack up the debtor's property. Sunrise Senior Living Management, ordered the property to be packed up and moved out of the residence. The police were telephoned and they explained that this was an illegal eviction as Sunrise Senior Living Management, had no authority to enter the property, no authority to pack up the debtor's property and no authority to move debtor property. As this was trespassing, Sunrise Senior Living Management, was asked by the police to stop the packing and to leave the residence. They violated the US Bankruptcy Court and the debtor.

In Virginia, trespassing in a condominium is governed by the same general trespass laws

that apply to other private properties. Under Virginia Code § 18.2-119, it is unlawful for any person without authority of law to enter or remain on the lands, buildings, or premises of another. On an additional occasion, Sunrise Senior Living Management violated §18.2-369 via theft of property of a vulnerable adult. They entered my property without my permission. And took my modem that I purchased. Confirm Per Luis Ruiz, Director of Facilities, exhibit 02. Sunrise Senior Living Management stated: "I also want to inform you that the cable modem was disconnected from your unit during the second week of July." They violated the law and the debtor.

A phone recording was done by Southern from outside the residence of the inside of the residence including the persons and personal items. This violates a reasonable expectation of privacy, of what was going on inside the residence. In Virginia, it is illegal to capture both video and audio recordings of a person without their consent, as prohibited by Virginia Code § 19.2-62, which governs the interception for recording of communications. Southern should have known better not to record from the outside of a home of what is going on inside of a home. This law applies even if the recording is conducted on private property for security purposes. Once again Welltower via Southern performance was unprofessional and illegal. Debtor requests relief in cancellation of the purchase contract plus damages and to stop all future relationships between Southern and Welltower/Sunrise. Also relief and review of other contracts or real estate work that Southern or Welltower are involved in that may be unprofessional. Debtor requests relief in that Southern phone be turned over to the police for proper deletion of illegal capture recordings.

**Argument**

Further argument as it is brought to the attention of the Court that the debtor first moved in
2014 and there were no issues until the last few years, when the debtor began making
complaints to the county, state, and federal government, including the Veterans
Administration. A report was received in 2024 regarding the 2023 inspection which stated:
*"The Jefferson – Arlington, VA. This skilled nursing facility is located in Arlington, VA, and
has plenty of concerns that put residents' lives at risk. During its most recent health
inspection in 2023, it received 16 health citations, compared to the national average of 9.6.
The number of hours per patient for licensed practical and vocational nurses is only 44
minutes, compared to 53 minutes nationally. Another deficiency at this nursing home is the
percentage of short-stay patients who showed improvements in their ability to move around,
which is 69.1% compared to 76.8% nationally [6]. Though these variances may seem
minimal, they reflect a pattern of substandard service for patients at this skilled nursing
location."* In 2024 is when things went negative for the debtor, such as the unlawful acts
previously mentioned. After 10 years of peaceful enjoyment, this close proximity of
retaliation, needs to be mentioned as it is a protected activity. As cause is not defined by the
Bankruptcy Code and whether cause exists must be determined on a case by case basis. See,
e.g., CMF Loudon L.P. v. Nattchase Assocs., L.P. (In re Nattchase), 178 B.R. 409 (Bankr.
E.D. Va. 1994). Debtor respectfully asks the Court to consider retaliation, especially as so
many laws have been broken without any explanation. Debtor seeks to keep the automatic
stay imposed by section 362(a) of the Bankruptcy Code and request the Court to have
Welltower and Sunrise Senior Living Management obey the laws, especially as they have
trespassed more than one and taken property. In Virginia, elder abuse is a crime under

§18.2-369, with penalties from misdemeanors to felonies. Such as trespass and theft under

§18.2-119 and trespassing to mishandle debtor property to be packed up and moved out of

his residence. Trespassing while committing elder abuse or a crime, involve both statutes.

And the crime of the real estate person Southern violating Virginia code of recording. Relief

is sought.


## <u>Conclusion</u>

WHEREFORE, for all of the foregoing issues, red flag reasons, and fear of further trespass

or thievery by Sunrise Senior Living Management, the Debtor prays for

(a) cancellation of the MOTION FOR RELIEF FROM AUTOMATIC STAY as funds were

sent to Sunrise Senior Living Management but recorded incorrect, but paid in full. As there is

no 'Special Limitation' in the last five original deeds, and pursuant to the last original deeds,

Welltower has no basis for seizing the property. And cancellation due to failure of Welltower

to acknowledge proper ownership by not paying the county taxes. After contacting the

county, the debtor paid the real estate taxes as the owner of the property. And Welltower has

no basis for seizing the property due to their lack of their proper interest. And Welltower

failed to follow the Virginia Supreme Court in regard to reversions and the 'time' decision.

And Welltower failed to follow the Virginia Supreme Court in regard to reversions and the

'scope' decision. And Welltower failed to engage in an ethical and professional real estate

transaction in property showings, sales, and representing Welltower at closings. Especially as

Welltower through Southern engaged in trademark infringement, misleading the public,

misrepresentation of professionalism as a REALTOR and the possibility of violating dual

representation of the owner and the buyer but accepting a lowball offer. And due to temporal

proximity, things were great until the debtor began reporting violations. Also as debtor fell

behind in payment before, the previous Executive Director at Sunrise Senior Living. Juli

Swanson, worked with debtor and all funds were paid. Just like this time, all funds were paid

when one considers Virginia Code and not Sunrise Senior Living Management's time of

payment, thus there is no reversion allowed. And Sunrise Senior Living Management

breaching an established payment plan.

(b) Due to these issues, debtor respectfully ask the Court to consider financial compensation

for the fear they caused in the debtor along with mental and physical strain. Debtor suffers

from 'severe depression' and these actions have compounded the 'severe depression'. After

talking with his doctor he will now receive medication for depression. Request relief of the

total Monthly Service Fees and Minimum Required Fees due, plus interest and all costs,

including reasonable attorneys' fees.

(c) Request relief in the amount of $322,725.00 as purchase price for debtor's residence. In

which Welltower or Sunrise Senior Living Management, may sell it on to Carolyn and Richard

Stiener (collectively, the "Current Purchaser"), as third-party purchasers. Request the purchaser

be informed of Southern's action as they want to find a REALTOR. The $322,725.00 price is

determined by three areas which state that the sales price sells is approximately at 99.3%.

Which has a listing price of $325,000.00, in which Southern listed the property. The debtor will

leave the property within 30 days of receiving the $322,725.00 purchase price. Multiple sources

provide more accurate figures such as Long & Foster (June 2025): Homes sold for 99.1% of

their list price. Steadily (October 2025): Homes sold at approximately 99.4% of the original list

price. Fox Es Sell Faster (August 2025): Sellers received 99% of their original list price. And

99.3% per realtor.com:

https://www.realtor.com/local/market/virginia/arlington-county/arlington#:~:text=Get%20real%

20estate%20news%20sent&text=and%20the%20sales%2Dto%2Dlist%2Dprice%20ratio%20st

ands,Month%2Dover%2Dmonth.

(d) And as Sunrise Senior Living Management has entered the residence after the filing of

the bankruptcy, Debtor respectfully asks that Sunrise Senior Living Management be

officially ordered not to trespass in the future and be ordered to obey the US Bankruptcy

laws. Not to commit thievery in the future and be ordered to follow the US Bankruptcy laws.

And debtor respectfully ask the court to consider a fine or sanction against Sunrise Senior

Living Management for deliberately violating the law. And as punishment for all items, so

they will not do this to others, debtor request a waiver of the Monthly Service Fees,

Minimum Required Fees, attorney fees, along with all accrued interest and collection costs.

(e) And pay for financial reimbursement for the modem stolen by Sunrise Senior Living

Management, plus damages as a credit to residence June bill, as proven in the email, Per Luis

Ruiz, Director of Facilities, Sunrise Senior Living Management. And debtor respectfully ask

the court to consider a fine or sanction against Sunrise Senior Living Management for

deliberately violating the law. And as punishment all items, so they will not do this to other a

waiver of the Monthly Service Fees, Minimum Required Fees, attorney costs, along with all

accrued interest and collection costs.

(f) And have the funds owed to the Debtor from Sunrise Senior Living Management, that was requested several times and again requested in May of 2025 be credited to residence June bill for both amounts due from 2024 and early 2025. ($1,620.00 and $1,230.00). Plus any financial damages the court deems fit so that Sunrise Senior Living Management will act more promptly and not wait until after the seizure of property. And as punishment all items, so they will not do this to others, request a waving of the Monthly Service Fees, Minimum Required Fees, attorney costs, along with all accrued interest and collection costs.

(g) And have Southern's phone turned over to the police so the illegal recording can be deleted and the police may review other violations committed by Welltower through Southern.

(h) And credit debtor's account for the charge of the Internet, after May 2025, as the modem was taken and Internet services were cancelled. The debtor requests $630.00 as a credit and for damages. And debtor respectfully ask the court to consider a fine or sanction against Sunrise Senior Living Management for deliberately violating the law.

(i) And have Sunrise Senior Living Management correctly post payment per Virginia Code rather than incorrectly by the service agreement. And debtors respectfully ask the court to consider a fine or sanction against Sunrise Senior Living Management for deliberately violating the law.

(j) And because the amount due on August 27, 2025 is incorrect, have Sunrise Senior Living Management correct the billed for August 2025, as it is not due until the first of the following

month, making the amount $5,006.00 less. And have Sunrise Senior Living Management accept all checks and payments sent in August 2025 and September 2025 properly credited to debtor's account showing the amount was paid and overpaid within the agreed 30 day period. And debtor respectfully ask the court to consider a fine or sanction against Sunrise Senior Living Management for deliberately violating the law.

(k) And have a joint audit of debtor accounts by someone other than Sunrise Senior Living Management or Welltower staff. Such as the debtor's attorney and paid for by Sunrise Senior Living Management or Welltower.

(l) And have a credit of the Monthly Service Fee amount for each month that Sunrise Senior Living Management violated the law, especially in regard to stopping meals, linen service, and housekeeping. Yet charging the debtor paid for meals, linen service, and housekeeping, which is a legal violation. And debtor respectfully ask the court to consider a fine or sanction against Sunrise Senior Living Management for deliberately violating the law.

(m) And cancellation of the reversion as more than enough funds were paid for the correct amount due on 27 August 2025 and any excess going to pay the debtor's bankruptcy bills.

(n) And request names of persons that trespassed when showing the property with their real estate license number. And debtor respectfully ask the court to consider a fine or sanction against Sunrise Senior Living Management for deliberately violating the law.

(o) And if the information furnished establishes a reasonable belief that a criminal violation has occurred, request the United States Trustee or the Court refer the matter to the United

States Attorney or local authorities for possible investigation and prosecution.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy to be served electronically through the ECF system by requesting my attorney Richard Owen Bolger to perform such and upon the following persons via electronic mail:

> Richard Owen Bolger
> Bolger Law Firm, PLLC
> Email: richard@bolgerlaw.com
> Counsel for Debtor

> Thomas P. Gorman, Chapter 13 Trustee
> Email: tgorman@chapter13alexva.com

> Robert M. Marino, Esq. VSB #26076
> Redmon, Peyton & Braswell, LLP
> 510 King Street, Suite 301
> Alexandria, Virginia 22314-3143
> Phone: 703-879-2676 (Direct)
> Facsimile: 703-684-5109
> Email: rmmarino@rpb-law.com
> Counsel for Sunrise Senior Living Management, Inc.,
> acting as manager on behalf of Welltower OPCO Group
> LLC, as owner of The Jefferson Residential
> Condominium

/s/ Joseph John Sunday

Joseph John Sunday

Exhibit 01

↱ **The Jefferson.GM (John Marcinik)** <TheJefferson.GM@...  Mon, May 12, 2025, 1:22 PM   ☆  ☺  ↩ Reply  ⋮

to me, The ▾

Mr. Sunday,

Good afternoon. Thank you for the recent payments to reduce your balance since our previous conversation. You can of course continue to make partial payments, but your services will not be resumed until the past due balance is paid in full.

If you wish to speak to me regarding your past due balance and plans to bring current, please see Felice to set up a time this week to discuss. Please be advised that I am on vacation May 17th-May 26th, returning onsite Tuesday May 27th.

Regards,

*Dennis Marcinik*
*General Manager*



900 N. Taylor St. Arlington, VA 22203
**Direct:** 703-741-7552

Exhibit 02

**The Jefferson.DES (Luis Ruiz Jaquez)** <T...   Nov 10, 2025, 11:01 AM   ☆   ☺   ↩ Reply   ⋮
to me, The ▾

Hi Mr. Sunday,

I want to follow up on my July conversation with Kenneth regarding your request. After careful review, I agree to cancel your services, effective June 30, 2025, which was supposed to be your last active day. I also want to inform you that the cable modem was disconnected from your unit during the second week of July.

Please note that you will not be billed for internet service after June 30, unless there are outstanding balances from previous transactions. "I'm including @The Jefferson.CONT (Pamela K Hairston-White) in case you need any further clarification."

Feel free to contact me if you have any questions or concerns about this matter.

Sincerely,


**Luis Ruiz** | **Director of Facilities**

**The Jefferson**
**900 N Taylor St**
**Arlington, VA 22203**

Exhibit 03



# Austin Southern & Roxanne Southern: Monumental Team | Arlington REALTORS

Exhibit 04

From: <contactnar@nar.realtor>
Date: Fri, Oct 3, 2025 at 5:10 PM
Subject: NAR Response
To: <Jjsunday@gmail.com>

Hello,
Thank you for contacting NAR's Member Support. The person Roxanne Southern is not active with NAR at this time you will
need to contact Virginia Department of Professional and Occupational Regulation Real Estate Board their phone number is:
(804) 367-8500 due to this person not being apart of NAR this person is not a Realtor. Does not mean they are not a Real
Estate agent.
We appreciated the opportunity to serve you today, and I hope this information is helpful. If there's any other way I can assist,
please let me know!
Thanks again for contacting NAR Member Support!
Victoria
NAR Member Support
1-800-874-6500
https://www.nar.realtor